# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ROBERT PORTNER BREWING CO. v. SOUTHERN EXPRESS CO. AND OTHERS.

### December 3, 1908.

1. INTOXICATING LIQUORS—*Breweries—Shipments to No-License Terri-tory—Private Consumers.*—Under the act of assembly approved March 12, 1908 (Acts 1908, p. 275), commonly known as the "Byrd Law," a manufacturer of malt liquors, whether such manufactory be situated in "licensed" or "no-license" territory, has no right to sell·his product, to be delivered to a common carrier to be transported to a place where it cannot be legally sold. The private consumer living in "no-license" territory may buy in small quantities for personal use, but those engaged in the illegal sale of liquor cannot buy in large quantities from the manufacturers or wholesale dealers and use the common carriers as their aiders and abettors in their violation of the law. The general purpose of the law is to restrain and regulate the sale of liquor and, in furtherance of that purpose, to protect "no-license" territory from illegal traffic in liquor.

Appeal from the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Byrd & Brent* and *J. T. Lawless,* for the appellant.

*Thos. W. Shelton* and *Robt. C. Alston,* for Southern Express Co., appellee.

*Robertson & Wingfield,* B. F. Buchanan and Wm. Hodges Mann,* for other appellees.

Buchanan, J., delivered the opinion of the court.

The only question involved in this appeal is, whether or not, under the act of assembly approved March 12, 1908, found in chapter 189 of the Acts of 1908, pp. 275, 281-2, the manufacturer of malt liquors, where such manufactory is situated in "licensed" territory, has the right to sell his product, to be delivered to a common carrier to be transported to a place where it cannot be legally sold.

The State Corporation Commission, from whose order this appeal was granted, in deciding this question, delivered the following opinion, which is filed with and made a part of the record:

"The construction of the act approved March 12, 1908, known as the 'Byrd Law,' Acts 1908, page 275, is involved, and especially that part of section 15 (p. 282), which reads as follows:

" 'For the privilege of manufacturing malt liquors there shall be paid one hundred and fifty dollars, and upon payment of such specific sum the manufacturer shall have the privilege of selling the products of his brewing in quantities of two dozen pints or more at any place within the State of Virginia, except where such manufactory is situated in a no-license territory, in which case no sale shall be made and delivery had at the place of manufacture; but such manufacturer may sell the product of his brewing to be delivered to a common carrier to be transferred to any place where same may be legally sold; and the said manufacturer shall have the additional privilege of selling the products of his brewing in quantities not less than one gallon at the place of manufacture, except in no-license territory.'

"It must be conceded, and the petitioner does concede, that if the manufacturer of malt liquors is located in 'no-license' territory, he can only ship to places where liquor may be legally sold, but he contends that this prohibition does not apply to such a manufacturer who is located in 'license' territory.

"It can certainly be said that there is no reason for such a discrimination between persons engaged in the same business, and if the language used is to be so construed, it should be clear that it was so intended.

"When considered fairly and without reference to the rest of the statute, its meaning is not perfectly clear. It is apparent that the general purpose of the law is to restrain and regulate the sale of liquor and in furtherance of that purpose to protect no-license territory from illegal traffic in liquor. This is evident because, while it allows the retailer to sell either spiritous or malt liquor in small quantities and does not in terms prohibit his delivering liquor in small quantities to common carriers, it is perfectly evident that its purpose is to prevent common carriers from transporting large quantities of liquor into no-license territory.

"It will be noted that by section 5 social club licenses are prohibited in no-license territory.

"By section 7 druggists who desire to sell ardent spirits are required to take out retail liquor license, except that they may use liquor in the preparation of medicine.

"Under section 12 sample merchants can only sell to some licensed person, club or corporation.

"Under section 14 manufacturers of wines and cider containing more than six per cent. of alcohol, are prohibited from selling in no-license or local option territory, and may not deliver to a common carrier, except to be transported to some place where ardent spirits may be legally sold.

"Under section 15 manufacturers of alcoholic liquors, as well as distillers of fruit brandy, are only permitted to deliver their product at the house where manufactured, or to a common carrier to be transported to a place where it may be legally sold.

"The double purpose, that is, allowing liquor in small quantities to be transported by common carriers only to be delivered to consumers for private use, and at the same time

discouraging illegal traffic in liquor by prohibiting the transportation of large quantities by common carriers, is, we think, also sufficiently indicated by the provision above quoted with reference to the manufacture of malt liquor.

"The first two clauses fix the amount of the license tax, and discriminate between the manufacturer situated in no-license territory and the manufacturer located in license territory by providing, that if located in no-license territory no sale shall be made and delivery had at the place of manufacture.

"The next clause, and the one which gives rise to this controversy, separated by semi-colons from all the rest of the section, uses this language:

" 'But such manufacturer may sell the product of his brewing to be delivered to a common carrier to be transferred to any place where same may be legally sold.'

"In order to sustain the contention of the petitioner, we must limit the meaning of the words 'such manufacturer' to a manufacturer located in no-license territory, and thus make a discrimination in favor of the manufacturer located in license territory, without any reason whatever for such discrimination, and in defiance of the general policy and purpose of the statute as a whole.

"This, however, is not the only language to indicate that such a construction would be erroneous, for the next clause reads:

" 'And the said manufacturer shall have the additional privilege of selling the products of his brewing in quantities not less than one gallon at the place of manufacture, except in no-license territory.'

"Now, by every rule of reason, the words 'said manufacturer,' in the last clause, must mean the same as the words 'such manufacturer' in the clause immediately preceding, and the words 'said manufacturer' plainly and in express terms refer to both classes of manufacturers, whether located in license or in no-license territory.

"The word 'manufacturer' is used only three times in the paragraph under consideration: In the first clause as 'the manufacturer'; in the third clause as 'such manufacturer'; and in the fourth clause as 'said manufacturer,' and we conclude that they mean any licensed manufacturer of malt liquors in the State, and that the only difference between the two classes of manufacturers intended by the statute is that the manufacturer located in license territory can sell and deliver not less than one gallon at the place of manufacture, while the manufacturer located in no-license territory can make no sale and delivery at the place of manufacture. We believe that this construction effectuates the apparent purpose of the legislature, and is in accordance with the avowed policy of the State to protect no-license territory from illegal traffic in liquor by discouraging its transportation in large quantities by the common carriers into such territory for such illegal sale.

"Under this construction the private consumer living in no-license territory may buy in small quantities for personal use, while those who are engaged in the illegal sale of liquor cannot buy in large quantities from the manufacturers or wholesale dealers and use the common carriers as their conscious or unconscious aiders and abettors in their violations of the law."

We are of opinion that the conclusion reached by the Corporation Commission as to the proper construction of the statute in question is clearly right; and as the reasons given in its opinion for reaching its conclusion are in accord with our views and are satisfactorily expressed, we adopt its opinion as our own, and will affirm the order appealed from.

*Affirmed.*